IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

|   |   |
|---|---|
| CANDACE ALSTON, | * |
| Plaintiff, | * |
| v. | * Case No.: GJH-20-690 |
| TOWNEBANK, *et al.*, | * |
| Defendants. | * |

**MEMORANDUM OPINION**

In this action, Plaintiff Candace Alston brings breach of contract, Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and defamation claims against Defendants TowneBank, Dovenmuehle Mortgage, Inc. ("DMI"), and Trans Union, LLC. ECF No. 76. Now pending before the Court are Defendant DMI's Motion to Dismiss, ECF No. 77, and Defendant TowneBank's Motion to Dismiss, ECF No. 78. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons discussed, the Motions are granted in part and denied in part.

1

I.     **BACKGROUND**[1]

Plaintiff lives in Maryland. ECF No. 76 ¶ 2.[2] Defendant TowneBank is a community bank. *Id.* ¶ 3. Defendant DMI is a mortgage loan subservicing company. *Id.* ¶ 4. Plaintiff obtained a mortgage loan from Monarch Bank on November 12, 2010, to purchase a condominium in Prince George's County, Maryland. *Id.* ¶ 7. In July 2016, Defendant TowneBank acquired Monarch Bank. *Id.* ¶ 3.

From November 2016 to May 2017, Plaintiff and Defendants TowneBank and DMI disputed the status of Plaintiff's mortgage. *Id.* ¶¶ 12, 13, 14, 17. Plaintiff claims that Defendants were reporting inaccurate information about Plaintiff's loan to credit reporting agencies ("CRAs"). *Id.* ¶ 11. On September 8, 2017, Plaintiff and Defendant TowneBank agreed to resolve their dispute. *Id.* ¶ 27. Pursuant to the Settlement Agreement between the parties, Plaintiff agreed to pay, and TownBank agreed to accept, a settlement sum as payment in full satisfaction of the loan. *Id.* ¶ 27; *see also* ECF No. 78-6 ("Settlement Agreement").[3]

On September 8, 2017, Plaintiff paid TowneBank the settlement sum to satisfy the mortgage debt. *Id.* ¶ 28.[4] Plaintiff received the original promissory note, and a Certificate of

---

[1] Unless stated otherwise, the facts relied on herein are taken from the Third Amended Complaint, ECF No. 76, and presumed true.

[2] All pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[3] Plaintiff frequently references the Settlement Agreement and indeed, the first count is for breach of the Settlement Agreement. However, Plaintiff does not provide the Settlement Agreement in the Third Amended Complaint. Defendant TowneBank provides the Settlement Agreement in the Motion to Dismiss. *See* ECF No. 78-6. The Court considers the Settlement Agreement while ruling on these Motions. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (holding that "a court may consider [a document attached to a motion to dismiss] in determining whether to dismiss the complaint [when] it was integral to and explicitly relied on in the complaint and [when] the plaintiffs do not challenge its authenticity.").

[4] Plaintiff claims that the parties agreed that Plaintiff would pay $60,000 to satisfy the loan, ECF No. 76 ¶ 27, but the Settlement Agreement states that Plaintiff agreed to pay $44,087, ECF No. 78-6 at 4.

Satisfaction for the mortgage was recorded in the land records of Prince George's County on September 15, 2018. *Id.* ¶ 37. However, Defendants DMI and TowneBank then sent Plaintiff a mortgage statement on or around September 25, 2017. *Id.* ¶ 29.[5] The mortgage statement demanded Plaintiff pay TowneBank $2,938.90 by October 1, 2017. *Id.* ¶ 33. Around October 23, Plaintiff wrote TowneBank to explain that, per their agreement, she had paid off the mortgage. *Id.* ¶ 37.

Plaintiff claims that Defendants DMI and TowneBank also reported to Experian, a CRA, that Plaintiff's account had a balance of $86,409 and a delinquent payment history. *Id.* ¶ 38. Plaintiff says that she did not discover this inaccurate report until August 2019, nearly two years later. *Id.* ¶ 40. Plaintiff disputed this report on August 28, 2019. *Id.* ¶ 41. On November 28, 2019, the matter was resolved, and Experian reported the debt as paid, closed, and with no prior delinquency. *Id.* ¶ 45.

On February 5, 2019, Plaintiff, proceeding *pro se*, initiated this civil action against Defendants TowneBank, DMI, Equifax, and Trans Union in Virginia circuit court. *See* ECF No. 1. In her original Complaint, Plaintiff alleged violations of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-202; the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301; the Maryland Mortgage Fraud Protection Act, Md. Code Ann., Real Prop. § 7-401; and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681i(a), 1681e(b), 1681(g). *Id.* On March 4, 2019, Equifax, with the consent of the other Defendants, removed this action to the United States District Court for the Eastern District of Virginia. *Id.* Defendants' motions to dismiss were mooted by Plaintiff's First Amended Complaint, ECF No. 25, which was filed on April 23, 2019. Plaintiff's First Amended Complaint dropped Plaintiff's

---

[5] Plaintiff alleges that DMI "sends mortgage statements" in the name of TowneBank. *Id.* ¶¶ 31, 32.

state statutory claims, added a claim for breach of contract, and added three additional FCRA claims, *see* 15 U.S.C. §§ 1681s-2(b)(1)(A)–(D).

In response to the First Amended Complaint, Defendants collectively filed three Motions to Dismiss and an Answer, ECF Nos. 27, 28, 29, 30, 31, 35, 36. Plaintiff was then granted leave to file the Second Amended Complaint, which added additional factual allegations and a seventh FCRA claim, *see* 15 U.S.C. § 1681s-2(b)(1)(E), and mooted Defendants' Motions to Dismiss. ECF Nos. 46, 53. The action was also transferred here, pursuant to 28 U.S.C. § 1404(a). ECF No. 53. After retaining counsel, Plaintiff then moved for leave to file a Third Amended Complaint. ECF Nos. 64, 65. The Third Amended Complaint added a defamation claim. Defendant TowneBank consented to the motion, provided that Plaintiff would file no further amendments. *See* ECF No. 66. Defendants DMI and Equifax filed Notices of Joinder and Consent to Defendant TowneBank's Response. ECF Nos. 67, 71.

On March 11, 2021, this Court granted leave to file the Third Amended Complaint but noted Plaintiff's history of mooting motions to dismiss through motions to amend. ECF No. 75. This Court ordered the parties to respond to Plaintiff's Third Amended Complaint within 14 days. *Id.* In the Third Amended Complaint, Plaintiff brings a claim of breach of contract claim against Defendants DMI and TowneBank, ECF No. 76 ¶¶ 47, 49 (Count I); Fair Credit Reporting Act claims against Trans Union and Equifax, *id.* ¶¶ 57, 63, 74, 86 (Counts II, III, IV); Fair Credit Reporting Act claims against Defendants DMI and TowneBank, *id.* ¶¶ 89, 102, 113, 123 (Counts V, VI, VII, VIII), and a defamation claim against Defendants DMI and TowneBank, *id.* ¶ 132 (Count IX).[6]

---

[6] The defamation claim is listed as "Count Five" in the Third Amended Complaint, but it is actually the ninth count. *See* ECF No. 76 ¶ 130.

On March 24, 2021, Defendants DMI, TowneBank, and Equifax filed Motions to Dismiss. ECF Nos. 77, 78, 79. Defendant Trans Union filed an Answer, which also asserted affirmative defenses. ECF No. 80. Plaintiff then filed the Motion for Leave to File a Fourth Amended Complaint on May 10, 2021. ECF No. 82. Defendant Equifax and Plaintiff then stipulated to the dismissal of Equifax. ECF No. 88. The Court denied the Motion for Leave to File a Fourth Amended Complaint and directed Plaintiff to respond to the pending Motions to Dismiss. ECF No. 91. Plaintiff has responded. ECF No. 92.[7]

## II.   STANDARD OF REVIEW

"A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6)." *Maheu v. Bank of Am., N.A.*, No. 12-cv-508-ELH, 2012 WL 1744536, at *4 (D. Md. May 14, 2012) (citing *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of Plaintiff's claims, the Court accepts factual allegations in the Complaint as true and construes the factual allegations in the light most favorable to the Plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd of Comm'rs of Davidson C'ty.*, 407 F.3d 266, 268 (4th Cir. 2005). However, a court need not accept a plaintiff's legal conclusions as true, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. The Complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid

---

[7] Given the delays in this litigation, and the fact that these issues have been briefed repeatedly both in the pending motion and prior motions for leave to amend, the Court determines that a reply brief is unnecessary.

of further factual enhancement[.]" *Nemel Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). "Moreover, the court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Philips v. Pitt C'ty Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (internal quotation marks and citations omitted)).

### III. DISCUSSION

#### A. Breach of Contract (Count I)

In the Settlement Agreement, Plaintiff and Defendants DMI and TowneBank agreed that Plaintiff would pay $44,087.00 to Defendant TowneBank in exchange for TowneBank's cancellation of the promissory note. *See* ECF No. 78-6 at 4. Plaintiff waived her right to pursue any of the three active lawsuits she had against Defendants, *id.* at 5, as well as "any and all claims, demands, causes of action, or right or entitlement to relief, unknown or unknown," that could have been asserted in the lawsuits, as well as "any and all claims, demands, causes of action, or right or entitlement to relief, known or unknown in connection with the Loan, Note, Deed of Trust, or any credit report related thereto[,]" *id.* at 9. Defendants agreed to request the deletion or removal of the reporting of the loan as late to CRAs Equifax, Experian, and Trans Union. *Id.* The Settlement Agreement noted that Defendants' "obligation under this Section . . . is limited to communicating . . . to Equifax, Experian, and Trans Union" the request. *Id.* The Agreement further noted that neither Defendant "shall be responsible [nor] liable for any failure on the part" of the CRAs to "comply with [Defendants'] requests that negative credit reporting be removed." *Id.* Finally, the Settlement Agreement also provided that a party may enforce the Agreement through a suit filed in the District of Maryland. *Id.* at 8.

Plaintiff brings a breach of contract claim against Defendants DMI and TowneBank. ECF No. 76 ¶ 47. Plaintiff alleges that she fully performed her obligations under the Settlement Agreement, and Defendants breached the contract by failing to accept Plaintiff's payment and by reporting an outstanding balance to Experian. *Id.* ¶¶ 49, 50, 53.

The parties agree that Maryland law applies. *See* ECF No. 77-1 at 6; ECF No. 78-1 at 12; ECF No. 92 ¶ 8. To establish a claim for breach of contract, Plaintiff must demonstrate that a contract was formed, Defendant breached the contract, and Plaintiff suffered damages as a result. *Antonio v. Sec. Servs. of Am., LLC*, 701 F. Supp. 2d 749, 761 (D. Md. 2010) (citing *Parlette v. Parlette*, 88 Md. App. 628, 640 (Md. Ct. Spec. App. 1991)). "[A] Complaint alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Dern v. Liberty Mut. Ins. Co.*, No. 15-cv-1737-GJH, 2015 WL 8665329, at *4 (D. Md. Dec. 11, 2015) (quoting *RRC Ne., LLC v. BAA Md, Inc.*, 994 A.2d 430, 440 (Md. 2010) (emphasis in original) (internal quotations omitted)). "Although any breach of contract may give rise to a cause of action for damages, only a material breach discharges the non-breaching party of its duty to perform." *Jay Dee/Mole Joint Venture v. Mayor & City Council of Baltimore*, 725 F. Supp. 2d 513, 526 (D. Md. 2010) (internal citations omitted). "[A] breach is material 'if it affects the purpose of the contract in an important or vital way.'" *Id.* (quoting *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005) (internal quotations and citations omitted)).

"Settlement agreements are enforceable as independent contracts, subject to the same general rules of construction that apply to other contracts." *Maslow v. Vanguri*, 168 Md. App. 298, 316, 896 A.2d 408, 419 (2006). "Maryland follows the objective law of contract interpretation and construction." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 178, 776 A.2d 645,

7

653 (2001) (citing *Adloo v. H.T. Brown Real Estate, Inc.*, 344 Md. 254, 266, 686 A.2d 298, 304 (1996)). ""A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated.'" *Id.* (quoting *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985) (citations omitted)).

Here, as an initial matter, Plaintiff has failed to allege a breach of the Settlement Agreement regarding Defendants' attempts to "collect" on the mortgage. Plaintiff asserts that Defendants breached the Settlement Agreement by "failing to accept Plaintiff's payment as full satisfaction of the Note," ECF No. 76 ¶ 49, but Plaintiff only alleges that Defendants sent her one mortgage statement, *id.* ¶¶ 33, 35. Plaintiff alleges that she wrote TowneBank a letter explain that the mortgage had been paid off, *id.* ¶ 37, and then makes no allegations regarding further attempts to collect. Plaintiff also acknowledges that Defendants returned the original promissory note to her and recorded a Certificate of Satisfaction for the mortgage. *Id.* The errant transmission of a single mortgage statement is not a breach, material or otherwise, of any of the contractual provisions in the Settlement Agreement, and thus there was no breach of contract due to Defendants' actions in this regard.

Second, Plaintiff alleges that Defendants breached the Settlement Agreement by reporting to Experian that Plaintiff still owed an outstanding balance. ECF No. 76 ¶ 50. The Settlement Agreement provides that Defendants will request the deletion or removal of negative reporting relating to Plaintiff's loan. *See* ECF No. 78-6 at 6. The Agreement specifically notes that "Towne's obligation under this Section . . . is limited to communicating" to Equifax, Experian, and Trans Union, the "request for deletion/removal of negative credit reporting[.]" *Id.* Additionally, the Settlement Agreement provides that neither Defendant "shall be responsible or

liable for any failure on the part of Equifax, Trans Union, Experian or any other consumer credit reporting agency to comply with the Bank's or DMI's requests that negative credit reporting be removed." *Id.* Additionally, the Settlement Agreement obligated Defendants to communicate the credit report requests to Equifax, Trans Union, and Experian within "ten business days" of receiving Plaintiff's settlement payment. *See id.*

Plaintiff alleges that Defendants failed to perform their obligations to report to Experian that the loan was fully discharged. ECF No. 76 ¶ 38. Plaintiff alleges that Defendants did not actually send requests to Experian until after Plaintiff discovered the issue in August 2019. *See id.* ¶¶ 41, 42, 43. Plaintiff also alleges she had to undertake several months of communications with Defendants and Experian to resolve the issue. *See id.* ¶¶ 40–45. It is true, as Defendants argue, ECF No. 78-1 at 8, that the contractual obligation was limited to just the "communication" of the information to Experian—and thus Defendants would not be liable for any failure on the part of Experian to correct the reporting after having received Defendants' requests, *see* ECF No. 78-6 at 6. However, Plaintiff alleges that, in contrast to the correct communications sent to Equifax and Trans Union, Defendants failed to correctly communicate the status of the loan to Experian. ECF No. 76 ¶ 39. Thus, Plaintiff has adequately alleged a breach of one of the contract's provisions, which required Defendants to submit requests to Equifax, Experian, and Trans Union within "ten business days" of the receipt of Plaintiff's settlement payment. ECF No. 28-6 at 6.

It is also true that Plaintiff has not alleged a material breach of the Settlement Agreement. *See Jay Dee/Mole Joint Venture*, 725 F. Supp. 2d at 526 (noting that a "material breach . . . affects the purpose of the contract in an important or vital way.") (internal quotations and citations removed). But in Maryland, "any breach of contract may give rise to a cause of action

9

for damages." *Id.* (citing Restatement (Second) of Contracts § 236); *see also Ledo Pizza Sys., Inc. v. Ledo Rest., Inc.*, No. 6-cv-3177-DKC, 2010 WL 1328538, at *5 (D. Md. Mar. 29, 2010), *aff'd in part*, *vacated in part*, *remanded*, 407 F. App'x 729 (4th Cir. 2011) ("Defendants argue that any breach was not material. Materiality, however, is not a prerequisite to recover damages for breach of contract; rather, it comes into play only when the non-breaching party seeks to be excused from its own performance[.]") (citing 23 Williston on Contracts § 63.3 (4th ed. 2007)). Thus, an action may be maintained even for "minor" breaches. *See Riesett v. W.B. Doner & Co.*, 293 F.3d 164, 174 (4th Cir. 2002).

Finally, Defendant TowneBank urges the Court to conclude instead that Defendants did meet their contractual obligations and Experian just failed to correct the report. *See* ECF No. 78-1 at 8. TowneBank provides extrinsic evidence in support of this argument. *See* ECF Nos. 78-6, 78-7, 78-8, 78-9. However, at this stage in the pleadings, and because Defendants did not seek summary judgment, the Court cannot consider the proffered exhibits. *Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see also* Fed. R. Civ. P. 10(c). In evaluating a motion to dismiss, the Court may not consider documents that "were not explicitly referenced in, or an integral part of, the plaintiffs' complaint[.]" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). Given the Court's duty to take the allegations in the Complaint as true, and to view the facts in the light most favorable to Plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing Fed. R. Civ. P. 12(b)(6)), the Court finds that Plaintiff's breach of contract claim regarding the correction request to Experian survives.[8]

---

[8] Because the Settlement Agreement specifically carves out claims "with respect to the obligations undertaken pursuant to this Agreement" and allows for the enforcement of the contract through suit filed in the District of Maryland, Plaintiff's breach of contract claim is not barred by the release of claims provision. *See* ECF No. 78-6 at 6, 8.

### B. Fair Credit Reporting Act Claims (Counts V, VI, VII, VIII)

Plaintiff alleges several violations of the Fair Credit Reporting Act ("FCRA"). *See* 15 U.S.C. § 1681s-2(b)(1)(A); 15 U.S.C. §1681s-2(b)(1)(B); 15 U.S.C. §1681s-2(b)(1)(C)&(D); 15 U.S.C. §1681s-2(b)(1)(E). Defendants maintain that the Settlement Agreement bars these claims. *See* ECF No. 78-1 at 14.[9]

In the Settlement Agreement, Plaintiff agreed to "release and forever discharge[]" Defendants from "any and all claims" that Plaintiff may have had against Defendants regarding past disputes over the status of Plaintiff's loan, as well as "any and all claims, demands, causes of action . . . known or unknown in connection with the Loan, Note, Deed of Trust[,] or any credit reporting related thereto." ECF No. 78-6 at 6. Defendants similarly agreed to a broad release of claims against Plaintiff. *Id.* Finally, the Settlement Agreement provided that the parties could file a lawsuit to enforce the agreement. *Id.* at 8.

Settlement agreements are enforceable as independent contracts, and "public policy considerations favor the enforcement of settlement agreements." *Maslow*, 168 Md. App. at 316; *see also Bernstein v. Kapneck*, 290 Md. 452, 459, 430 A.2d 602, 606 (1981) (noting that "particularly in this era of burgeoning litigation, compromise and settlement of disputes outside of court is to be encouraged"). Courts will enforce the parties' agreed upon terms, "to ascertain and effectuate the intention of the contracting parties." *Maslow*, 168 Md. App. 298, at 317 (citation omitted). Thus, release of legal claims provisions have been upheld when they are "sufficiently definite." *4900 Park Heights Ave. LLC v. Cromwell Retail 1, LLC*, 246 Md. App. 1,

---

[9] The majority of the factual allegations Plaintiff makes regarding the FCRA claims are premised on conduct that predates the Settlement Agreement. *See* ECF No. 76 ¶¶ 12–26, 89, 102, 113. Plaintiff now states that she "withdraws" any allegations based on pre-Settlement Agreement conduct. ECF No. 92 ¶ 32. The Court need not consider whether Plaintiff has adequately alleged FCRA violations in light of the claims release provision in the Settlement Ageement.

11

31, 227 A.3d 757, 774, *cert. denied sub nom. 4900 Park Heights Ave. v. Cromwell Retail*, 469 Md. 655, 232 A.3d 257 (2020).

Plaintiff's FCRA claims fall within the broad language of the claims release provision. The release provision does not only apply to claims in Plaintiff's prior lawsuits against Defendants. By the plain language of the Agreement, the parties intended to "release and forever discharge" each other from any claim falling into the broad scope of "all claims . . . known or unknown . . . in connection with the Loan . . . or any credit reporting[.]" ECF No. 78-6 at 6; *see Kaye v. Wilson-Gaskins*, 227 Md. App. 660, 686, 135 A.3d 892, 907 (2016) ("[I]n construing the parties' contract, we aim to discern 'what a reasonable person in the position of the parties would have meant at the time it was effectuated' to determine whether the parties sought a release, a covenant not to sue, or both.") (quoting *Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 8, 98 A.3d 264, 268 (2014) (internal quotations and citations omitted)); *see also Virginia Impression Prod. Co. v. SCM Corp.*, 448 F.2d 262, 265 (4th Cir. 1971) (reasoning that "the very nature of a general release is that the parties desire to settle all matters forever. A general release such as we have here not only settles enumerated specific differences, but claims of every kind or character, known and unknown.") (internal quotations omitted).

Courts have enforced broad general releases like those in the Settlement Agreement. *See Kaye*, 227 Md. App. at 685; *see also Canon, U.S.A., Inc. v. Lease Grp. Res., Inc.*, 312 F. App'x 537, 540 (4th Cir. 2009) (declining to review claims because the "express language" of the settlement agreement "forbids appellate review of a district court's disposition of any dispute."). Parties may also agree to "release unaccrued claims.'" *Kaye*, 227 Md. App. at 685. Thus, the Maryland Court of Special Appeals enforced a settlement agreement which provided that the parties would "release and forever discharge" all "claims and demands . . . which may hereafter

arise" because the parties "promis[ed] to forever forbear from litigating matters that fall within the agreement's scope." *Id.* Based on the clear language of the provision, the parties here similarly agreed to a broad release of claims related to the loan or any credit reporting related to the loan—then or in the future.

Plaintiff next argues that the Settlement Agreement, and therefore the waiver of claims provision, is no longer in force because of Defendants' alleged breach. ECF No. 76 ¶ 51. Essentially, Plaintiff requests that the Court either excuse her performance under the contract or "rescind" the contract. *See Speed v. Bailey*, 153 Md. 655, 139 A. 534, 537 (1927) (explaining "the law as being well settled that, when there has been substantial breach of a contract, the other party has a right to rescind the contract or to refuse to perform it and sue for damages[.]").

"The right of rescission is the right to cancel (rescind) a contract upon the occurrence of certain kinds of default by the other contracting party." *Maslow*, 168 Md. App. at 323 (quoting Black's Law Dictionary 1306–07 (6th ed. 1990)). "In general, '[w]here . . . there has been a material breach of a contract by one party, the other party has a right to rescind it.'" *Id.* (quoting *Washington Homes, Inc. v. Interstate Land Development Co.*, Inc., 281 Md. 712, 728, 382 A.2d 555 (1978)). "However, rescission will not be granted 'for casual or unimportant breaches, but only for a substantial breach tending to defeat the object of the contract.'" *Id.* (quoting *Vincent v. Palmer*, 179 Md. 365, 373–374, 19 A.2d 183 (1941)). "Consequently, 'substantial performance under a contract permits the recovery of damages,' rather than rescission." *Id.* (quoting *Traylor v. Grafton*, 273 Md. 649, 687, 332 A.2d 651, 674 (1975)). Similarly, a duty to perform under a contract is also only discharged by a "material" breach." *See Jay Dee/Mole Joint Venture*, 725 F. Supp. 2d at 526.

As discussed in Part A, Plaintiff does not allege a "material" breach by either Defendant. Plaintiff actually alleges that Defendants "substantially performed" on the contract. Plaintiff and Defendants agreed that Plaintiff would satisfy the loan with a payment, and Defendants accepted the payment, returned the promissory note, and released the deed of trust. *See* ECF No. 76 ¶ 37. Even accepting Plaintiff's allegations as true, a discharge of Plaintiff's duties under the contract, or a recission of the contract, is unwarranted. *See Slavin v. Imperial Parking (U.S.), LLC,* No. 16-cv-2511-PWG, 2019 WL 1384214, at *5 (D. Md. Mar. 27, 2019) ("For a breach to be material, it must go to the root or essence of the agreement between the parties[.]") (internal quotations and citation omitted)). Thus, Plaintiff's FCRA claims are barred by the Settlement Agreement.

### C. Defamation (Count IX)

Finally, Plaintiff brings a claim for defamation against Defendants DMI and TowneBank. ECF No. 76 ¶ 132. Plaintiff alleges that Defendants reported false information to the CRAs. *Id.* ¶ 133. As noted, the Settlement Agreement's broad release covers any claim related to the loan or "any credit reporting" connected to the loan. ECF No. 78-6 at 9. Plaintiff's defamation claim is specifically related to Defendants' reporting to the CRAs. Thus, Plaintiff's defamation claim is barred by this provision.[10]

## IV. CONCLUSION

For the reasons discussed, the Motions to Dismiss are granted in part, and denied in part. Plaintiff's claim for breach of contract regarding the requests to Experian survives (Count I). All

---

[10] Additionally, a claim for defamation is generally barred under the FCRA. *See* 15 U.S.C. § 1681h. A plaintiff must meet a high bar of willful or malicious intent. *See Beuster v. Equifax Info. Servs.*, 435 F. Supp. 2d 471, 479 (D. Md. 2006) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S. Ct. 710, 726, 11 L. Ed. 2d 686 (1964)). The Court need not decide whether Plaintiff adequately pleaded willfulness or malice in light of the Settlement Agreement's bar of the claim.

other claims against Defendants TowneBank and DMI are dismissed with prejudice (Counts V, VI, VII, VIII, IX). A separate Order follows.


Dated:  March   31  , 2022             /s/_____
                                       GEORGE J. HAZEL
                                       United States District Judge